UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KAREN J. BALCOMBE,

                        Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

                        Defendant.

CASE NO. 10-cv-5302-RJB

REPORT AND RECOMMENDATION

Noted for May 13, 2011

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed. (See ECF Nos. 19, 20, 23)

After considering and reviewing the record, the undersigned finds that the ALJ failed to evaluate properly plaintiff's Hidradenitis Suppurativa and obesity, failed to evaluate properly plaintiff's credibility, and failed in his duty to develop the record. Therefore, the ALJ's findings are based on legal error and the undersigned recommends that this matter be REVERSED and REMANDED.

REPORT AND RECOMMENDATION - 1

BACKGROUND

Plaintiff was born on September 10, 1956, and was twenty-eight years old on June 30, 1985, the date it appears that her insured status expired (Tr. 2222). Plaintiff graduated from high school, has completed a college course, and has some training working with computers (Tr. 105, 865, 2223). In 1980 and 1981, plaintiff had substantial gainful activity as a purchasing agent and a data clerk (Tr. 2224). While she was working as a data clerk, she "slipped on the top step and fell in the seated position down the stairs landing at the bottom of the staircase" (Tr. 864). Her main complaint was "pain in the buttock area" (id.). Although there was "no evidence of fractures," plaintiff had received only X-rays, repeatedly sought treatment, and on June 26, 1984 reported that she felt that her condition was "worsening because of radiation of pain down into the buttocks region" (Tr. 864).

Plaintiff had a hearing before Administrative Law Judge Denny Allen (hereinafter "the ALJ") regarding this matter on June 19, 2007 (Tr. 2213-2235). The ALJ asked plaintiff at the start of her hearing if she wanted him "to discuss with [her] the benefits and burdens of having a representative or d[id] [she] wish to represent [her]self in this matter" (Tr. 2220). Plaintiff replied that she wanted "to discuss it. I couldn't afford one so . . . ." (id.). The ALJ interrupted plaintiff and stated "that's not my question. My question is do you want me to discuss with you the benefits and burdens of having a representative" (id.). This time, plaintiff simply replied "yes" (id.) The ALJ described the definition of disability to plaintiff, and asked plaintiff if she "[u]nderstand[s] that?" (id.). Plaintiff replied "[y]es, yes sir. That was different than I understood before" (id.). The ALJ replied "[t]hat's not my question. The question is do you understand that?" (Tr. 2221). Plaintiff replied "[y]es, sir" (Tr. 2221). The ALJ next discussed "legal filters," and how "a lawyer knows all" (Tr. 2221). The ALJ added:

REPORT AND RECOMMENDATION - 2

1
2
3

> A lawyer knows how to interpret the evidence.  That's the benefit that you get, but *nobody works for free*.  A lawyer is paid for his services if they are successful in obtaining back benefits for you.  Their fee is capped at the lesser of $5300 or 25% of back benefits.

(Tr. 2221) (emphasis added). Plaintiff stated that she understood, and that she would represent herself. (Tr. 2221-22).

Plaintiff testified that in June, 1985, she would not have been able to tolerate a job situation where she could either sit or stand because she would have had "to lay down several times during the day to get the pressure off of my back," due to moderate to severe pain (Tr. 2226, 2227). She testified that she would need to do this "probably two to four times a day," between the hours of 9:00 a.m. to 5:00 p.m. (id.). Although plaintiff did not have surgery for her back during the relevant time frame, she indicated at her hearing that she had another type of surgery at this time. (Tr. 2228). The ALJ failed to make any inquiries of plaintiff regarding her surgery, and stated to her "no, I'm talking about your back" (Tr. 2229).

A vocational expert testified at plaintiff's hearing (Tr. 2229-34). This expert testified that if plaintiff's residual functional capacity was limited to the extent suggested by plaintiff's testimony, that "would pretty much eliminate her return to work" (Tr. 2233). However, the expert also testified that if plaintiff's residual functional capacity was as assessed by the State Agency medical consultants, then plaintiff would be capable of performing her past relevant work (Tr. 2232-33). When plaintiff attempted to question the vocational expert as to whether or not there was "any type of work that [she] [could] do," the ALJ interrupted plaintiff and stated that the vocational expert "said that given the limitations that you identified as existing back in June of 1985, that there would be no work that you could perform" (Tr. 2234). Plaintiff replied "okay, I didn't understand how she was answering" (id.).

PROCEDURAL HISTORY

On July 29, 2004, plaintiff applied for Social Security Disability benefits (Tr. 42). The Social Security Administration (hereinafter "the Administration") determined that plaintiff's date last insured was June 30, 1985 (Tr. 42, 44). On August 30, 2004, the Administration denied plaintiff's claim, and informed her, among other things, that "[t]here are groups that can help you find a lawyer or give you free legal services if you qualify" (Tr. 55). The Administration also denied her request for reconsideration on December 2, 2004 (Tr.49-50). The Administration again informed plaintiff regarding her options regarding legal services on December 2, 2004 (Tr. 50).

Plaintiff requested a hearing (Tr. 46-48), and as referenced above, this hearing occurred on June 19, 2007 before Administrative Law Judge Denny Allen (hereinafter "the ALJ") (Tr. 2213-35). The ALJ issued a written decision on September 13, 2007, in which he found, among other findings, that plaintiff's last insured date was June 30, 1985 and that she had the severe impairments of chronic lumbosacral strain and coccydynia prior to the expiration of her insured status (Tr. 26, 24-29). He also found that plaintiff had the "residual functional capacity to perform light work except [that she] was limited to occasional climbing [], balancing, stooping, kneeling, crouching, and crawling," and that she was "to avoid concentrated exposure to vibration" (Tr. 26-27). Finally, the ALJ found that plaintiff was capable of performing her past relevant work (Tr. 28), and found her "not under a disability . . . . at any time from June, 1, 1985, the amended onset date, through June 30, 1985, the date last insured" (Tr. 29).

On February 23, 2010, the Appeals Council denied plaintiff's request for review, making the September 13, 2007 written decision by the ALJ the final decision subject to judicial review

(Tr. 3-5). On April 28, 2010, plaintiff filed a complaint in the District Court seeking judicial review (ECF No. 1).

In plaintiff's opening brief, she contends that the ALJ erred by, among other things: (1) failing to find plaintiff's Hidradenitis Suppurativa severe or alternatively, failing to develop the record regarding plaintiff's skin condition of Hidradenitis Suppurativa; (2) failing to find plaintiff's obesity severe, or failing to consider properly plaintiff's obesity; (3) failing to continue the hearing so that plaintiff could retain counsel, and failing to evaluate properly plaintiff's credibility (ECF No. 19, pp. 3-8, 11).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (*citing* Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th

Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see Richardson v. Perales, 402 U.S. 389, 401 (1971).

## DISCUSSION

1. <u>The ALJ failed to consider properly plaintiff's Hidradenitis Suppurativa.</u>

Step-two of the administration's evaluation process requires the ALJ to determine whether an impairment is severe or not severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). The "step-two determination of whether a disability is severe is merely a threshold determination of whether the claimant is able to perform his past work." Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007). Therefore, a finding that the disability of a claimant "is severe at step-two only raises a prima facie case of a disability." Id. (*citing* Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999)).

An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step-two severity determination in terms of what is "not severe." According to the Commissioner's regulations, an impairment is "not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a) (1991). Basic work activities are "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding

appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (*quoting* Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (*adopting* Social Security Ruling "SSR" 85-28)). The step-two analysis is "a de minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290 (*citing* Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987)).

According to Social Security Ruling 96-3b, "[a] determination that an individual's impairment(s) is not severe requires a careful evaluation of the medical findings that describe the impairment(s) (*i.e.*, the objective medical evidence and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairments(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities." SSR 96-3p, 1996 SSR LEXIS 10 (*citing* SSR 96-7p); see also Slayman v. Astrue, 2009 U.S. Dist. LEXIS 125323 at *33-*34 (W.D. Wash. 2009). If a claimant's impairments are "not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment[s] do[] not prevent the claimant from engaging in any substantial gainful activity." Bowen, 482 U.S. at 146. Plaintiff bears the burden to establish by a preponderance of the evidence the existence of a severe impairment that prevented performance of substantial gainful activity, and that this impairment lasted for at least twelve continuous months. 20 C.F.R. §§ 404.1505(a), 404.1512, 416.905, 416.1453(a), 416.912(a); see also Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998) (*citing* Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995)). It is the claimant's burden to "'furnish[] such medical and other evidence of the existence thereof as the

1  Secretary may require.'" Bowen, 482 U.S. at 146 (*quoting* 42 U.S.C. § 423(d)(5)(A)) (*citing*

2  Mathews v. Eldridge, 424 U.S. 319, 336 (1976)); see also McCullen v. Apfel, 2000 U.S. Dist.

3  LEXIS 19994 at *21 (E.D. Penn. 2000) (*citing* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.1505,

4  404.1520).

5        The record includes multiple references to plaintiff's skin condition of Hidradenitis

6  Suppurativa. For example, plaintiff indicated Hidradenitis among her conditions and further

7  indicated that "[w]hen I get in [lower back] pain that is very sever[e] I tend to sweat and then I

8  break out with hydernatis (sic) (sores)" (Tr. 70). Plaintiff apparently suffered from this condition

9  as early as 1980 (Tr. 361 ("abscesses [in the] groin and axilla [armpit]")). In addition, the record

10  indicates that plaintiff had surgery for this condition (Tr. 865), and perhaps this is the surgery she

11  was referring to when the ALJ indicated that he only wanted to hear about her back condition

12  (Tr. 2228-29). See supra p. 3. The Court notes that in some circumstances, Hidradenitis

13  suppurativa can satisfy the listing requirements of Listing 8.06: "Hidradenitis suppurativa, with

14  extensive skin lesions involving both axillae, both inguinal areas or the perineum that persists for

15  at least 3 month despite continuing treatment as prescribed." 20 C.F.R. Pt. 404, Subpt. P., App.

16  1, Listing 8.08.  Despite the evidence of plaintiff's skin condition, and the fact that this condition

17  can support a finding of disability based on listing requirements at step three of the sequential

18  disability evaluation, the ALJ fails to mention plaintiff's Hidradenitis Suppurativa in his

19  decision.

20        The Court also notes, but does not rely on, the new evidence submitted to the Appeals

21  Council by Dr. James M. Komorous, M.D., (hereinafter "Dr. Komorous"), plaintiff's long-term

22  treating physician since 1981, indicating that he followed plaintiff "because of severe

23  hidradenitis suppurativa," and noted his observations of plaintiff's "recurrent painful draining

'boils'" (Tr. 1834). He also indicated that "[w]hen she has flare ups she is physically incapacitated and forced to take various pain medications" (id.; see also Tr. 1678, 1832).

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work,'" and this step-two analysis is "a de minimis screening device to dispose of groundless claims." Smolen, supra, 80 F.3d at 1290. Therefore, here, where plaintiff indicated that she suffers from this painful skin condition whenever her lower back pain is severe (Tr. 70), and the record further indicates that plaintiff had surgery for this condition (Tr. 865), the evidence establishes more than "a slight abnormality" having only a "minimal effect" of plaintiff's ability to work. Smolen, supra, 80 F.3d at 1290.

In addition, the ALJ "has an independent 'duty to fully and fairly develop the record.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (*quoting* Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)). If a social security claimant is not represented by counsel, it is "'incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992) (*per curiam*) (*quoting* Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)). However, the ALJ's duty to supplement the record is triggered only if there is ambiguous evidence or if the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan, 242 F.3d at 1150.

Here, as previously discussed, plaintiff indicated that she suffers from this painful skin condition whenever her lower back pain is severe (Tr. 70), and the record further indicates that plaintiff had surgery for this condition (Tr. 865). In addition, plaintiff was not represented by counsel. The Court concludes that the ALJ did not "scrupulously and conscientiously probe into,

inquire of, and explore for all the relevant facts,'" regarding plaintiff's skin condition, demonstrated during the hearing when plaintiff mentioned that she did not have back surgery in June, 1985, but indicated that she had another surgery (Tr. 2228), and the ALJ responded: "no, I'm talking about your back" (Tr. 2229). Higbee, supra, 975 F.2d at 561.

For the aforesaid reasons, the undersigned concludes that the ALJ failed to evaluate properly plaintiff's skin condition of Hidradenitis Suppurativa by failing to find it severe, and failing to develop the record regarding this impairment. The Court finds the evidence regarding this condition significant and probative. The undersigned, therefore, recommends that the Court set aside the Commissioner's denial of social security benefits. See Bayliss, supra, 427 F.3d at 1214 n.1.

2. The ALJ failed to consider properly plaintiff's obesity.

The ALJ also failed to mention plaintiff's obesity. The record indicates that plaintiff was six feet tall and 235 pounds on July 11, 1984 (Tr. 865). At plaintiff's Body Mass Index of 31.9, this indicates that she was obese. See e.g., http://www.nhlbisupport.com/bmi/. Although the ALJ "need not discuss *all* evidence presented," in this case, the ALJ should have explained why the "significant probative evidence [of plaintiff's obesity] has been rejected." Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam) (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)).

In addition, according to Social Security Ruling, "SSR," 02-01, the Administration "consider[s] obesity to be a medically determinable impairment and remind[s] adjudicators to consider its effects when evaluation disability . . . . [ALJs are] to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process." 2002 SSR LEXIS 1 at *2-*3 (2002).

In this case, there is no evidence that the ALJ was aware of plaintiff's obesity. Therefore, the undersigned concludes that the ALJ failed to evaluate properly plaintiff's obesity, and that this error provides an independent basis for reversal and remand of this matter to the Administration for further consideration.

3.  The ALJ failed to evaluate properly plaintiff's credibility.

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting* Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing* Calhoun v. Bailar, 626 F.2d 145, 150 (9th Cir. 1980))). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A)).

Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (*citing* Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). If an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" Id. at 972 (*quoting* Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)); Reddick, 157 F.3d at 722 (citations omitted); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness, inconsistencies in testimony, daily activities, and "unexplained or inadequately

explained failure to seek treatment or to follow a prescribed course of treatment." Smolen, 80 F.3d at 1284.

The determination of whether to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; Smolen, 80 F.3d at 1281 (*citing* Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (*en banc*) (*citing* Cotton, 799 F.2d at 1407). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Smolen, 80 F.3d at 1283-84; Reddick, 157 F.3d at 722 (*citing* Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996); Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

In his decision, the ALJ includes the following:

> After considering the evidence of record, I find that [plaintiff]'s medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but that the [plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

(Tr. 28). In support of his adverse credibility decision, the ALJ relies in part on the medical opinion evidence supplied by medical examiners, in which they concluded that plaintiff was capable of light work with certain limitations (Tr. 28). The ALJ also relies in part on the objective medical evidence, noting plaintiff's normal X-rays (id.). However, once a plaintiff has established that her "medically determinable impairments" can result in the symptoms she

REPORT AND RECOMMENDATION - 12

alleges, as the ALJ concluded is the case here (Tr. 28), the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." See Bunnell, supra, 947 F.2d at 343. As there is no affirmative evidence that plaintiff is malingering, the ALJ was required to provide "clear and convincing" reasons for rejecting her testimony. Smolen, supra, 80 F.3d at 1283-84. The Court concludes that the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's testimony regarding limitations due to alleged severe pain, and that this error provides an independent basis for reversal and remand of this matter to the Administration for further consideration.

4. Regarding the Administration's duty to inform a claimant about options for obtaining legal representation.

Regarding the Administration's duty to inform a claimant about options for obtaining an attorney,

> [i]f you are not represented by an attorney and [the Administration] make[s] a determination or decision that is subject to the administrative review process … and it does not grant all of the benefits or other relief you requested or it adversely affects any entitlement to benefits that [the Administration] ha[s] established or may establish for you, [the Administration] will include with the notice of that determination or decision information about your options for obtaining an attorney to represent you in dealing with us. [*The Administration] will also tell you that a legal services organization may provide you with legal representation free of charge if you satisfy the qualifying requirements* applicable to that organization.

20 C.F.R. § 404.1706 (emphasis added); see also 42 U.S.C. § 406(c). This regulation and statute resolved the issue of whether or not the Administration must inform a claimant regarding the availability of free legal counsel, in favor of requiring increased disclosure of the availability of free legal counsel to claimants. See Lamay v. Astrue, 562 F.3d 503, 508 (2d Cir. 2009); see also discussion infra pp. 15-16.

REPORT AND RECOMMENDATION - 13

Here, on August 30, 2004, and on December 2, 2004, the Administration informed plaintiff, among other things, that "[t]here are groups that can help you find a lawyer or give you free legal services if you qualify" (Tr. 55). However, at plaintiff's hearing on June 19, 2007, after interrupting plaintiff's statement regarding the fact that she "couldn't afford" legal representation (Tr. 2220), and repeatedly discouraging her questions and statements (e.g., "[t]hat's not my question" (Tr. 2220, 2221)), the ALJ informed plaintiff that:

> A lawyer knows how to interpret the evidence. That's the benefit that you get, but *nobody works for free*. A lawyer is paid for his services if they are successful in obtaining back benefits for you. Their fee is capped at the lesser of $5300 or 25% of back benefits.

(Tr. 2221(emphasis added).). Therefore, although the Administration technically fulfilled the duty to inform plaintiff regarding the potential availability of free legal services pursuant to 20 C.F.R. § 404.1706 and 42 U.S.C. § 406(c), the ALJ verbally informed plaintiff at her hearing that "nobody works for free" (Tr. 2221). In addition, by using passive tense to describe how a "lawyer is paid for his services," the ALJ created ambiguity regarding whether or not plaintiff would have the burden of a potential $5,300 expense. As plaintiff had stated that she could not afford an attorney just before the ALJ interrupted her, he knew that this particular plaintiff had the potential need for (and the potential to qualify for) free legal services (See id.).

The Second Circuit Court of Appeal has held Administrative Law Judges to an explicit requirement that "at the hearing itself, 'the ALJ must ensure that the claimant is aware of [her] right [to counsel],'" Lamay v. Astrue, 562 F.3d 503, 507 (2d Cir. 2009) (*citing* Robinson v. Sec. of Health & Human Services, 733 F.2d 255, 258 (2d Cir. 1984) (*citing* Cutler v. Weinberger, 516 F.2d 1282, 1286 (2d Cir. 1975))). The Seventh Circuit Court of Appeal further requires that "[t]o ensure a valid waiver of [claimant's statutory right to] counsel, we require the ALJ to explain to the *pro se* claimant . . . . the possibility of free counsel". Binion v. Shalala, 13 F.3d 243, 245

(7th Cir. 1994): but cf. Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1981) (*citing* Hall v. Secretary of Health, Education and Welfare, 602 F.2d 1372, 1378 (9th Cir. 1979)) (other citations omitted) ("[l]ack of counsel does not affect the validity of the hearing and hence warrant remand, unless the claimant can demonstrate prejudice or unfairness").

In an analogous situation to the one before this Court, the Fifth Circuit Court of Appeals reversed and remanded a decision regarding Social Security based, in part, on the conclusion that claimant did not receive a fair hearing and was prejudiced by a lack of counsel where notice to claimant indicated the potential availability of free legal services, but then, subsequently *implied* "that any representative whom the claimant may seek will have the right to demand a fee for these services." Clark v. Schweider, 652 F.2d 399, 403, 406 (5th Cir. 1981). Here, the Administration notified plaintiff in writing of the potential availability of free legal services, but then, at her hearing, the ALJ explicitly informed plaintiff that "nobody works for free" (Tr. 2221).

In an unpublished memorandum opinion, the Ninth Circuit implied a requirement regarding the notice of potential availability of free legal representation. Messer v. Apfel, 1999 U.S. App. LEXIS 3444 at *2 (9th Cir. 1999) (per curiam) (unpublished opinion) (disagreeing with plaintiff's contention that she "did not knowingly waive her right to representation at the hearing before the ALJ, [in part, because] . . . . upon questioning of the ALJ, [plaintiff at the hearing] was advised that counsel could be obtained without cost"). In the case at bar, contrary to informing plaintiff of the availability of counsel without cost, and contrary to the requirement in 20 C.F.R. § 404.1706 and 42 U.S.C. § 406(c) for defendant Administration to do the same, the ALJ informed plaintiff that "nobody works for free" (Tr. 2221).

In this case, the Court concludes that the ALJ potentially prejudiced plaintiff and confused her regarding the potential availability of free legal services, especially as a review of the hearing transcript reveals many instances where plaintiff appeared confused or not equipped fully to deal with the process (see Tr. 2216, 2218, 2219, 2223, 2233, 2234 ("I wouldn't know what to ask really . . . . Can I ask what a supplemental hearing is?")). The following exchange demonstrates this well:

> The ALJ: So, I'm going to conclude that you're amending your onset from December of '81 to June of '81?
>
> Plaintiff: What does that mean?"
>
> The ALJ: It really has no effect. It just keeps you within the date last insured and gives you the maximum benefit.

(Tr. 2223).

Of course, after being informed by the ALJ that her claimed onset date "really has no effect," and after the ALJ implied that he is just trying to help her get "the maximum benefit," she replied "[o]kay" (id.). The ALJ appears to provide plaintiff with his own opinion regarding the importance of her onset date, and regarding which onset date best suits her interests (see id.). However, the Court already has concluded that this matter should be reversed and remanded to the Administration for further consideration. In addition, plaintiff currently has counsel. Therefore, although the facts and the case law[1] suggest that defendant Administration did not comply properly with 20 C.F.R. § 404.1706 and 42 U.S.C. § 406(c), based on the recommendation of reversal and remand and plaintiff's current representation by counsel, there

---

[1] See Clark, supra, 652 F.2d at 406 (5th Cir. 1981); Binion, supra, 13 F.3d at 245 (7th Cir. 1994); see also Lamay, supra, 562 F.3d at 507 (2d Cir. 2009); Messer, supra, 1999 U.S. App. LEXIS 3444 at *2 (9th Cir. 1999).

REPORT AND RECOMMENDATION - 16

is no need to conclude whether or not this fact independently required reversal of the decision of the ALJ.

## CONCLUSION

The ALJ failed to evaluate properly plaintiff's impairments of Hidradenitis Suppurativa and obesity, failed to evaluate properly plaintiff's credibility, and failed in his duty to develop the record. Therefore, the undersigned recommends that this matter be REVERSED and REMANDED.  Because the ALJ committed legal error in evaluating plaintiff's severe impairments, following remand, the ALJ should begin the sequential disability evaluation at step two.

In addition, based in part on plaintiff's lack of counsel at the initial stages of this matter, the Court recommends that plaintiff should be allowed the opportunity to make arguments following remand and the opportunity to present new evidence, to the extent such evidence concerns the relevant time period for which plaintiff has insured status.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on May 13, 2011, as noted in the caption.

Dated this 18th day of April, 2011.

/s/ J. Richard Creatura

J. Richard Creatura
United States Magistrate Judge